OPINION
 "FIRST ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN RULING THAT IT WAS IN THE BEST INTEREST OF THE CHILDREN TO GRANT PERMANENT CUSTODY TO THE AGENCY BECAUSE THE CHILDREN CANNOT BE PLACED WITH THE PARENT WITHIN IN [SIC] A REASONABLE TIME OR SHOULD NOT BE PLACED WITH THE PARENT
"SECOND ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN NOT ALLOWING THE APPELLANT'S REQUEST FOR A CONTINUANCE OF THE PERMANENT CUSTODY TRIAL BECAUSE OF A MEDICAL CONDITION WHICH PREVENTED HER FROM BEING PRESENT AT THE TRIAL TO CONFRONT WITNESSES AND TO ASSIST HER DEFENSE
"THIRD ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN DETERMINING THE BEST INTEREST OF THE CHILDREN AS THE GUARDIAN AD LITEM BUT DID NOT SPECIFICALLY EXPRESS THE WISHES OF THE CHILDREN
"FOURTH ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN NOT GRANTING THE REQUEST OF THE APPELLANT THAT, IN THE ALTERNATIVE AND BECAUSE OF THE AGE OF THE CHILDREN, THEY BE PLACED IN LONG-TERM FOSTER CARE"
Christopher and Christian M., born January 8, 1986, and their sister[1] came under the protective supervision of the Erie County Department of Human Services ("agency") on June 13, 1994. On June 11, 1994, their mother had been involved in a one-car traffic accident due to her intoxication. The sister was in the car at the time and was slightly injured. The mother refused treatment at the hospital.
Following the adjudication hearing held on August 25, 1994 (in an order filed October 7, 1994), the court concluded that the boys were dependent children and granted the agency protective supervision. The mother admitted that she was an alcoholic and agreed to participate in an alcohol addiction treatment program. When protective day care was no longer available, the agency moved for temporary shelter care, which was granted by the court in an order filed on October 3, 1994.
At a dispositional hearing held on September 6, 1994, the agency dismissed its complaint without prejudice. The court, however, in an order dated October 21, 1994, merely continued the hearing. On February 7, 1995, the court entered a nunc pro tunc
judgment entry adding to the October 21, 1994 judgment entry that temporary custody of the boys was given to the agency.
Temporary custody of the boys was extended every six months until the permanent custody hearing was held from April 30 until May 1, 1997.
At the outset of the hearing, the mother's attorney moved to continue the hearing because the mother could not attend the hearing on that date because she was participating in an in-patient alcohol dependency treatment program. The court denied the motion on the ground that the case had been open since 1994. However, at the end of the hearing, the court did continue the hearing for one day so that the mother could testify.
Since the mother did not object to the factual findings of the magistrate, the following are the facts determined by the magistrate. John Dillion testified that he worked on the case until he left the agency in December 1996. During that time, treatment of the mother's alcoholism was the central component of the case plan. After each treatment program, the mother began drinking again. She also would not cooperate in alcohol screenings set up by the agency. Dillion did learn of the mother's panic anxiety disorder that had been diagnosed in 1987, but the case plan was not amended.
Heather Taylor, an unlicensed social worker, took over the case in December 1996, shortly after she came to work for the agency. She testified that in total, the mother participated in three inpatient and at least four outpatient treatment programs. She has also been in a three-quarter house. More recently, the mother had been attending some AA meetings. Since December 1996, she also had been participating fairly regularly in alcohol screenings, with some of the results being negative. During Taylor's time on the case, the mother had had two relapses, once in February 1997 (when her blood alcohol measured .110) and again on March 16, 1997 (when her blood alcohol measured .368). At the time of the hearing, the mother was participating in another in-patient treatment program by her own choice. Because of her alcoholism, Taylor believed that the mother could not provide a legally secure, stable, and permanent place to live. Taylor also testified that the boys are adoptable, despite the fact that the record indicates that they are eleven years old, developmentally delayed, and have been diagnosed with Attention Deficit Disorder and Attention Deficit Hyperactive Disorder.
A police officer testified that on March 23, 1997, he arrested the mother for disorderly conduct. The mother had fallen off her bike and became hysterical when a neighbor came to help her. She was transported to the hospital where it was discovered that she had a blood alcohol level of 3.5 percent.
Although ordered to pay child support for each child since July 1996, she had not paid any. The mother testified that she was receiving Social Security Income from January 1995 until June 1996 because of her alcoholism. At the time of the hearing, she was unemployed.
Although the counselor for the boys never testified, their guardian ad litem did file a final report. In that report, she recommended that permanent custody of the boys be given to the agency so that the boys would not have to suffer any more.
The mother testified on her own behalf that she was now participating in an alcohol dependency treatment program by her own choice. She also testified that she came to realize during her most recent treatment that she has been verbally abused for years by her husband causing her to have little self-esteem and to feel weak, like a failure. He would scare her and threaten to take the children away. He kicked her out of the house in January 1996. At the time of the hearing, she was planning to stay at a homeless shelter until she could find a place to live.
The mother also testified that she completed parenting programs and other counseling. However, she never had an opportunity for reunification counseling with the boys. She met a few times with the counselor that was seeing the boys, but found that the counselor was not in favor of reunification and the boys were telling the counselor what she wanted to hear. Dillon testified that the agency had not wanted to start reunification counseling until the mother was capable of handling the boys.
The mother testified that the boys were conceived by a rape and that the perpetrator was never identified. The agency was never able to locate him either.
The mother did not argue at the hearing that the boys should be returned to her. Instead, she argued that they should be placed in long-term foster care so that their relationship with her, their sister, and their grandparents would not be severed.
Although the mother timely filed objections to the magistrates' report in this case, arguing that the findings of fact were against the manifest weight of the evidence, she did not file a transcript or affidavit to support specific objections as required by Juv.R. 40(E)(3)(b). Her motion for additional time to obtain a transcript and make specific objections to the factual findings was granted by the court on June 24, 1997. As of the court's August 6, 1997 judgment, the mother had not filed a transcript or more specific objections. The trial court adopted the findings of fact and conclusions of law of the magistrate.
Juv.R. 40(E)(3)(b) provides that: "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." Failure to comply with Juv.R. 40(E)(3)(b) constitutes waiver of the error on appeal. Inthe Matter of Williams (June 21, 1995), Allen App. No. 1-94-73, unreported.
Furthermore, the rule requires that "[a]ny objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of the evidence if a transcript is not available." Juv.R. 40(E)(3)(b). If the objecting party fails to provide the trial court with a transcript so that the court could independently review the findings of fact, the objecting party may only argue on appeal that the trial court abused its discretion in adopting the referee's report based upon the facts found by the magistrate. State ex rel. Duncan v. Chippewa Twp. Trustees
(1995), 73 Ohio St.3d 728, 730 (interpreting Civ.R. 53(E) which parallels Juv.R. 40).
The trial court can adopt the magistrate's decision, even if no objections are filed, "unless it determines that there is an error of law or other defect on the face of the magistrate's decision." Juv.R. 40(E)(4)(a).
In her first assignment of error, the mother argues that the trial court's finding that it was in the best interest of the children to grant permanent custody to the agency on the ground that the children could not be placed with the mother in a reasonable time is not supported by the evidence. Since the mother failed to file a transcript in this case with her objections and did not object to the magistrate's conclusions of law, she has waived her right to raise this issue on appeal. Accordingly, her first assignment of error is not well-taken.
In her second assignment of error, the mother argues that the trial court's refusal to continue the permanent custody hearing when the mother was unable to attend violated her due process rights.
Parents have a fundamental liberty interest in the care, custody and management of their children. Santosky v. Kramer
(1982), 455 U.S. 745 and In re Murray (1990), 52 Ohio St.3d 155,157. Therefore, in a permanent custody proceeding, "parents must be provided with fundamentally fair procedures in accordance with the Fourteenth Amendment Due Process clause and Section 16, Article I of the Ohio Constitution." In the Matter of Elliott
(June 25, 1993), Lawrence App. No. 92-CA-34, unreported. See, also, In the matter of Vandale (June 29, 1993), Washington App. No. 92 CA 31, unreported. Even in criminal proceedings, however, "`the presence of the defendant * * * is a condition of due process'" only if his absence would prevent a fair and just hearing. State v. Taylor (1997), 78 Ohio St.3d 15, 25 quotingSnyder v. Massachusetts (1934), 291 U.S. 97, 107-108.
In this case, the mother has not demonstrated how her presence would have aided her defense or how her absence detrimentally affected her interests. The hearing was continued so that the mother could attend to give her testimony. She was represented at the first portion of the hearing by her own chosen counsel. Therefore, we find that there was no due process violation in this case. The mother's second assignment of error is not well-taken.
In her third assignment of error, the mother argues that the trial court erred by determining the best interests of the children without considering their wishes. While the magistrate did not make a specific finding as to the wishes of the children, their mixed feelings of a desire to return home and a desire for a proper home is contained in the guardian ad litem's report filed in the record. There is nothing in the trial court's decision to indicate that it did not consider the guardian ad litem's report. Appellant's third assignment of error is not well-taken.
In her fourth assignment of error, the mother argued that the trial court erred by not granting her request that the children be placed in long-term foster care rather than terminating her parental rights. The magistrate concluded that long-term foster care was inappropriate in this case because the children "badly need closure, and placing them into the Long Term Foster system only prolongs their indefinite situation with no real promise of positive change."
Under R.C. 2151.415(C)(1) a court may place a child in long-term foster care if:
 "it finds, by clear and convincing evidence, that long-term foster care is in the best interests of the child and that one of the following exists:
 "(a) The child, because of physical, mental, or psychological problems or needs, is unable to function in a family-like setting and must remain in residential or institutional care;
 "(b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with division (D) of section 2151.414
[2151.41.4] of the Revised Code, and the child retains a significant and positive relationship with a parent or relative;
 "(c) The child is sixteen years of age or older, has been counseled on the permanent placement options available, is unwilling to accept or unable to adapt to a permanent placement, and is in an agency program preparing for independent living."
Subsections (a) and (c) are clearly not applicable in this case. The magistrate's report does not indicate whether she found that subsection (b) existed in this case or not. Nonetheless, she did specifically find that it would not be in the best interests of the children to have them placed in long-term foster care. Since the mother failed to object to the magistrate's factual findings, she has waived her right to argue that this finding was not supported by clear and convincing evidence. Appellant's fourth assignment of error is not well-taken.
Having found that the trial court did not commit error prejudicial to appellant, the judgment of the Erie County Court of Common Pleas, Juvenile Division, is affirmed. Pursuant to App.R. 24, appellant is hereby ordered to pay the court costs incurred on appeal.
JUDGMENT AFFIRMED.
 Peter M. Handwork, P.J.
 George M. Glasser, J.
 James R. Sherck, J.
CONCUR.
[1] The sister is not a party to this appeal.